UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                          . Case No. 06-10859 (KG)
                                .
                                .
    15375 MEMORIAL CORPORATION, .
                                .
                                . 844 N. King Street
                                . Wilmington, Delaware  19801
                    Debtor.     .
                                . October 4, 2006
. . . . . . . . . . . . . . . . . 10:00 a.m.

               TRANSCRIPT OF MOTIONS HEARING
              BEFORE HONORABLE KEVIN GROSS
             UNITED STATES BANKRUPTCY COURT


APPEARANCES:

For the Debtor:                 Stevens & Lee
                                By:  JOHN D. DEMMY, ESQ.
                                300 Delaware Avenue
                                Suite 800
                                Wilmington, DE  19801

                                Stevens & Lee
                                By:  JOHN KILGANNON, ESQ.
                                1818 Market Street
                                Philadelphia, PA  19103

For BEPCO L.P.:                 Morris, Nichols, Arsht &
                                Tunnell
                                By: GREGORY WERKHEISER, ESQ.
                                1201 North Market Street
                                P.O. Box 1347
                                Wilmington, DE  19899

Audio Operator:                 Michael J. Yovino


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311  Fax No.  (609) 587-3599**

**APPEARANCES (Cont'd):**

For BEPCO, L.P.:                    Carver, Darden, Koretzky,
                                    Tessier, Finn, Blossman &
                                    Areaux, LLC
                                    By:  LEANN O. MOSES, ESQ.
                                    1100 Poydras Street
                                    New Orleans, LA  70163


For Global Santa Fe:               Monzack and Monaco, P.A.
                                    By:  FRANCIS MONACO, JR. ESQ.
                                    400 Commerce Center
                                    Twelfth & Orange Streets
                                    Wilmington, DE  19899

1           COURT CLERK:  Please rise.

2           THE COURT:  Good morning everyone, please be seated.

3    Welcome.  I see we have some people on the telephone this

4    morning.

5           MS. MOSES:  Yes, sir.

6           THE COURT:  Is that you, Ms. Moses?

7           MS. MOSES:  Yes, sir, it is.

8           THE COURT:  Welcome to you and Mr. Fahr is it

9    pronounced?

10          MR. FAHR:  Yes, sir.  Good morning, Judge.

11          THE COURT:  Good morning.  And Mr. Pabst.

12          MR. PABST:  Yes, Your Honor.

13          THE COURT:  Welcome to you.  And we have in the

14   courtroom a number of counsel and Mr. Demmy is at the podium,

15   welcome, Mr. Demmy.

16          MR. DEMMY:  Thank you, Your Honor, good morning.

17   John Demmy on behalf of the Debtors and also I'm with another

18   lawyer from our office John Kilgannon.

19          THE COURT:  Good morning.

20          MR. DEMMY:  Your Honor we are here -- originally this

21   hearing was set as a pretrial conference, it still is a

22   pretrial conference in connection with the adversary proceeding

23   that was commenced by Santa Fe on September 8th.  As the Court

24   will recall, we had a hearing on September 8th in which we

25   provided some background to the Court regarding the case and

1  the adversary and the issues involved in Bass which are going

2  to predominate here at this proceeding.

3      THE COURT:  Yes.

4      MR. DEMMY:  The complaint that we filed, Your Honor,

5  was seeking declaratory and injunctive relief in connection

6  with certain claims that Bass had taken action in a pending

7  Louisiana lawsuit to assert, that we believe and have submitted

8  to the Court, are claims that are owned by the estate.

9  Basically, two types of claims.  One, so called alter ego or

10 single enterprise theory claims against other, I'll shorthand

11 them as Santa Fe affiliates, that's the way Bass has

12 shorthanded them in their papers.  Other claims they are

13 seeking to assert relate to insurance coverage of the Debtors

14 and in the Louisiana lawsuit Bass had filed a third party

15 complaint, we submit, in violation of the automatic stay.  The

16 Louisiana court dismissed that complaint and then Bass filed a

17 motion to reinstate that third party complaint, again, we

18 submit in violation of the automatic stay.

19      When we were here on September 8th, we were at a

20 point in the proceedings in which, at least in my view, it was

21 unclear how Bass was intending to proceed and I had asked the

22 Court to schedule a hearing on the preliminary injunction

23 motion at that time and we had some discussion and Bass'

24 counsel advised the Court that it was not inclined to do

25 anything in Louisiana and would await a ruling from this Court

with respect to whether or not these claims were the property

of the Debtor's estate or were the type of claims that Bass

could assert in its own right.  Before doing anything else in

Louisiana, we were happy to stand still on that basis and

proceeding in, you know, an orderly fashion.

That, as I said, Your Honor, was September 8th.  I

subsequently spoke to Bass' counsel and we had agreed on a way

of proceeding which involved Bass filing their responsive

papers at the end of September, which they did on September

29th and, unfortunately, I didn't see them, given the weekend,

until the 2nd.  And, that also we would use this hearing as a,

basically a status and a scheduling conference which, in

effect, we are still before the Court in regards to because

Bass has filed a motion to limit and shorten notice and they'll

be able to address that.

Your Honor, from the Debtor's prospective, there's a

couple of things here in regards to Bass' request to, in

essence, expedite the proceedings and have a hearing and a

resolution by the Court on the various motions.  I assume that

the Court is aware, at least, in title what motions were filed

by Bass.  I'm not going to get into the merits of them today.

THE COURT:  Yes, and I have reviewed them and I

understand and I understand there is a scheduling issue

relating, I think it's -- October 20 appears to be kind of an

outside date.

1          MR. DEMMY:  Well, we don't believe it is, for a

2    number of reasons that I'll get into.  We view the October 20

3    date as artificial in many respects and should not govern the

4    Court's thinking in terms of the scheduling of the bankruptcy

5    issues.  And I'll get into further detail on that.

6          The first point I wanted to make to the Court, Your

7    Honor, is that back on September 8th, Bass wanted to slow

8    things down and we were agreeable to doing that and now, of

9    course, they want to speed things up and they took three weeks,

10   three and a half weeks to get their motions together, to file

11   them with the Court and we think that we need a full and fair

12   opportunity to respond to them.  They have, obviously, raised a

13   lot of issues and a lot of serious issues that we believe we

14   should have a full and fair opportunity to respond to.

15         Working from the October 20 date, if Bass -- as Bass

16   submits they want a hearing, a resolution from this Court by

17   October 20.  Working backward from that, it gives us a minimal

18   amount of time to respond to issues involving the legitimacy of

19   the bankruptcy cases, whether the cases should remain as

20   Chapter 11, or whether an examiner should be appointed, and

21   lift stay issues and, clearly, we believe we

22   need a full and fair opportunity to respond to that in more

23   than a week or so, which is sort of what we'd come to if the

24   Court were inclined to provide a hearing prior to the October

25   20 date.

1      But beyond that, Your Honor, we believe the October

2  20 date is not a real deadline here for a number of reasons.

3  Bass, first of all, is seeking to assert claims against

4  entities that are not in the Louisiana lawsuit currently,

5  against insurance companies and against affiliates of Santa Fe,

6  and Santa Fe had been a party in that lawsuit and was dismissed

7  by the plaintiff after the bankruptcy was filed.

8      The court down in Louisiana and I don't think there's

9  -- I'm going to try to not say anything amiss that's outside of

10 the record, but I don't think anything I'm going to say is

11 disputed by any parties, there's been a case management order

12 entered by the Louisiana court and it basically provides for

13 the following dates, that in this litigation that's been

14 pending for a year and a half, in which these claims haven't

15 been asserted and were only asserted after the filing of the

16 bankruptcy case but, nevertheless, in a very complicated

17 lawsuit that's been pending for a year and a half, the court

18 has set the following schedule which is that there would be

19 final witness designations by November 1, which is only a

20 little over three weeks away, that the discovery would cut off

21 November 8th, that dispositive motions would be filed by

22 November 22, and that there would be a trial in the matter in

23 February of 2007, the court obviously provided some significant

24 time in between dispositive motions and the trial to deal with

25 motions if any are filed.

**J&J COURT TRANSCRIBERS, INC.**

1      We don't believe it's realistic, as a practical

2 matter, for nine parties and that's not the entire universe of

3 parties that Bass seeks to it, but it's the parties that relate

4 to the Debtors, their insurance companies and the affiliates,

5 but it's not realistic to believe that those nine parties could

6 be added even if, assuming argendo, that the court were to have

7 a ruling, were to rule in favor of Bass on the property of the

8 estate and the automatic stay issues which we don't believe the

9 court should rule in Bass' favor, we believe that those claims

10 are owned by the estate and Bass should not be allowed to

11 proceed but, nevertheless, assuming those things are true, and

12 even if the Louisiana court were inclined to let Bass proceed,

13 we don't believe it's realistic that any of those parties could

14 possibly fit that schedule as a practical matter.

15      And, we also believe that the Louisiana court has

16 recognized that and I'll be honest with Your Honor that we

17 don't have an order or a transcript, we're trying to see if

18 there is a transcript to this effect, we don't have it yet, but

19 we believe that the court stated very strongly at a recent

20 hearing in Louisiana that even if Bass is allowed to proceed,

21 that he would sever those claims.

22      So, Bass will stand here and say, well, we need these

23 rulings by October 20th so we can get these parties into the

24 case, serve them, and then they're bound by this extremely

25 short discovery and dispositive motion and trial schedule

because we'll be prejudiced otherwise, when it's not going to

happen anyway.

As a practical matter, these parties are not going to

be forced to proceed on the schedule that's been outlined by

the Louisiana court and they're not going to have a trial.

And, the claims that Bass seeks to assert, Your Honor, are

contribution claims. These are claims that can be asserted

after the Teebo litigation, which is the Louisiana litigation,

has run its course and we find out whether Bass has any

liability or not. If Bass has no liability, then there's no

contribution claim.

So, Bass is not going to be prejudiced at all, Your

Honor, if this Court precedes in an orderly fashion and deals

with all of these issues that have been raised by Bass in an

orderly fashion and give the Debtor an opportunity to respond

and do what it needs to do to preserve its assets in this

bankruptcy case.

Also, Your Honor, the claims that Bass seeks to

assert in addition to the new parties that will be injected

into the Louisiana case, those new claims. There's these alter

ego claims which have not been pled in Louisiana, are not part

of the case which is a case relating to property damage,

environmental damage of the plaintiffs who accede people in the

chain of title to recover for property damage. The alter ego

claims, although I think the plaintiffs at one point in the

1  case made some noise about them, have never been asserted, Bass

2  never asserted them either.  So, Bass would be seeking to

3  inject entirely new parties and new claims into that case.

4          The other part of this, Your Honor, is that we

5  believe there would be clear prejudice to the Debtors if this

6  matter moved forward in an expedited and unreasonably quick

7  fashion.  Clearly, Bass intends to reassert claims against the

8  Debtors in Louisiana litigation, but the Debtors have been out

9  of that case for approximately two months, well, a little less

10 than two months but, nevertheless, there's been a lot of things

11 that have happened in Louisiana since, and there's been

12 discovery taken, motions heard, there's motions set, obviously,

13 for the 20th and these are motions, Your Honor, that run the

14 gambit, they're not just the Bass motion to reinstate the third

15 party complaint, but there's a slew of substantive motions that

16 are on and the Debtors haven't been participating in the case

17 for six to seven weeks at this point and clearly there would be

18 prejudice to the Debtors in trying to make up.  The Debtors

19 have not had a chance to complete discovery in that case.

20         So, we believe for all those reasons, Your Honor,

21 Bass' request to have this Court rush and rule on these matters

22 prior to October 20 is inappropriate.  We believe that there

23 might be other parties involved, and becoming involved in the

24 mater and we think the Court should step back, let the parties

25 frame the issues for the Court and the Court can make a

decision on all of the issues that relate here to Bass and whether these claims are property of the estate, whether the cases should move forward.  We believe they should as Chapter 11 cases and in connection with the motion to dismiss and the motion to convert and the motion to appoint a trustee, we think there are factual issues.  We disagree with Bass' assertion that the facts as they recited them are undisputed.  So, we'd have to clearly check and see whether or not we need any discovery on any of those things.  There are some limited areas at this point that we believe we may need some discovery.  I can tell the Court candidly at this point, based on what's been filed, we don't think there's a need for an extensive discovery period, but I do think that there are disputed facts that we're going to take issue with and may need some limited discovery on.

So, for those reasons, Your Honor, we don't have any problem with the matters proceeding, but we just don't believe that they need to proceed in the fashion that Bass has suggested, the October 20 date is arbitrary, it's not a real date and Bass itself, Your Honor, has said that these issues should proceed here.  If they file a motion to transfer venue of the Louisiana lawsuit after they removed it and in that motion they basically said that the bankruptcy court should deal with the bankruptcy issues and we believe that that's appropriate.

1          THE COURT:  Would it be the Debtors' intention,

2   though, that the primary injunction matter, doesn't it make

3   sense to hear that at the same time as Bass' --

4          MR. DEMMY:  Yes, Your Honor.  I'm glad you brought

5   that up.  And, Mr. Werkheiser and I did have a chance to speak

6   briefly yesterday about today and that was one of the things

7   that we had discussed.

8          I think there's general agreement about that, that

9   again, it's -- and I don't think Bass is going to do anything

10  in Louisiana, but it's based on Bass' commitment not to do so

11  and as long as we have this Court as the place where the issues

12  are going to be resolved, there's no need to go forward on any

13  different basis with the preliminary injunction motion, I think

14  all the issues are somewhat overlapping and can be dealt with

15  on the same schedule.

16         THE COURT:  And, in that case, then, the timing is

17  going to depend on how hard the parties and the court in the

18  Louisiana litigation are breathing down the neck of Bass and

19  how much control it has over the timing of things.

20         MR. DEMMY:  Well, but as I said, Your Honor, it

21  doesn't seem to us that Bass is prejudiced if the Louisiana

22  case proceeds in the fashion that it is now, that is without

23  the Debtors, because the Debtors are in bankruptcy and if

24  there's an empty seat there, that's not the type of prejudice

25  to Bass that will require this Court to lift the stay and allow

1  Bass to pursue claims that we don't believe it has any

2  ownership of.  That's really what this comes down to and the

3  claims against the Debtors can be dealt with in this court and

4  and the assets of the Debtors can be dealt with in this court

5  and the alter ego type claims and the claims that Bass is

6  seeking to assert against the insurance companies, again, we

7  believe are property of the Debtors estate and they're in the

8  nature of contribution claims that can be dealt with after the

9  Teebo lawsuit has run its course.  So, I don't think the --

10 whether the parties or the court are breathing down Bass' neck

11 in connection with this property damage case down in Louisiana

12 really bears on the schedule that this Court needs to set for

13 the matters that are pending here, which are bankruptcy matters

14 that this Court needs to deal with.

15         THE COURT:  Okay.  Thank you, Mr. Demmy.

16         MR. DEMMY:  Thank you, Your Honor.

17         THE COURT:  Mr. Werkheiser, good morning.

18         MR. WERKHEISER:  Good morning, Your Honor.  Gregory

19 Werkheiser on behalf of BEPCO, LP, formerly known as Bass

20 Enterprises Production Company.

21         Your Honor, as you might expect, Mr. Demmy and I have

22 a slight difference of opinion on how these matters should

23 proceed.  Let me say as a threshold matter, I think to some

24 extent we're here on a motion to shorten that was filed out of

25 an abundance of caution because we did get the motions on file

on September 29th, and counting 20 days forward, that would

bring us to October 19th. So, as a technical matter and,

obviously, I realize that doesn't take into consideration any

of Your Honor's scheduling constraints, but as a technical

matter, that would be proper notice under the bankruptcy rules.

That said, Your Honor, we did want to file the

motions because we thought it was advisable to help everybody

understand the constraints that everybody was operating on here

and to try and set a schedule that would allow the Court, if it

was inclined to, to address these matters before October 20th.

Your Honor, if I could just spend a moment giving a

little bit of background about our understanding of where the

litigation in Louisiana stands, as Mr. Demmy noted, there is a

scheduling order that's in place, that was actually only

entered, I believe, on September 22nd, and circulated to the

parties on September 25th. That order does provide for an

October 20th hearing date to deal with all pending motions

which include Bass's motion for reinstatement of third party

claims.

I am not aware, standing here today and I had made

inquiries, that the court has made any statement on the record

to which all of the parties were privy to, indicating that if

Bass were to pursue these claims that it would, in fact, sever

them from the remaining action. For several reasons, I think

that isn't, by any means, a foregone conclusion.

**J&J COURT TRANSCRIBERS, INC.**

1    In terms of prejudice to Bass, Your Honor, I think it
2 is a very real prejudice which the Debtors really have
3 discounted improperly here.  I mean there are certainly the
4 obvious prejudices to Bass in terms of the cost of having to
5 litigate matters twice because there are certainly many, many
6 factual matters in common with the principle claims in this
7 case that relate to the contribution and indemnity claims that
8 Bass contends exists between it and the Santa Fe entities.

9    There is also the risk in the case of Bass that it
10 could conceivably be subject to an inconsistent judgment and
11 the fact that they'd have to relitigate liability on the main
12 case again if the Debtor is not present in reliance of the
13 automatic stay, arguably the Debtor is not bound by a
14 determination of liability as to Bass in the litigation which
15 means that Bass cannot -- if Bass cannot have liability
16 determined as to the plaintiffs, as to the Debtor as well, Bass
17 then, in order to pursue its third party claims is going to be
18 forced to go out and separately relitigate the basis of the
19 ultimate claim and then as a second step litigate its
20 contribution indemnity and related claims.

21    So, that is a very real prejudice to Bass and
22 somewhat related also to the prejudice that arises simply from
23 having the empty seat in the courtroom and the inability to
24 say, which we think is the case, in effect he did it.  And that
25 is, you know, a practical prejudice and, frankly, you know, a

1 very significant prejudice in a situation like this where, at

2 least from our perspective, it is highly questionable whether

3 the Debtor should be in bankruptcy in the first place.  This is

4 not a question of just should the stay be lifted and do the

5 equities warrant lifting the stay for Bass in an otherwise

6 validly filed bankruptcy case.  It's a very threshold issue of

7 whether this case belongs in bankruptcy at all, is at issue

8 here and we would submit we're prejudiced by virtue of simply

9 filing a bad faith petition and the inability to have that

10 issue adjudicated on a timely basis.  Bass is prevented from

11 pursuing claims that it has against entities that it thinks are

12 responsible to it.

13         Insofar as the arguments that Your Honor has heard as

14 to prejudice to the Debtors, I think I would characterize those

15 as certainly being overstated.  The Debtors have been

16 significantly involved in the Louisiana, the Teebo litigation,

17 they've engaged in substantial discovery, documentation

18 production had taken the defendant depositions.  From our

19 viewpoint, we understand them to be fully up to speed and,

20 really, Your Honor, I think -- I'm not sure what the

21 unspecified substantive motions that Mr. Demmy refers to, but

22 from my understanding, really, the only material matters in

23 terms of the litigation, but which are not material to these

24 Debtors that occurred, is that following the bankruptcy filing

25 Bass attempted to assert the third party claims, those were

dismissed because of a perceived procedural defect, Bass filed

a motion to reinstate, the Debtor then raised the issue of the

automatic stay, sued Bass, Bass removed the action and moved

the transfer venue to this court on the belief that because the

Debtor had said that these issues implicate bankruptcy issues,

that the matters in the litigation had become intertwined with

the matters in the bankruptcy court, Louisiana bankruptcy court

disagreed, remanded the action to the state court and then

following that the Court reset the trial date and number of the

deadlines in the pretrial order and hearing dates in the

litigation.

　　　　To my knowledge, nothing particularly material beyond

that has occurred in a relatively short period of time since

the bankruptcy filing has taken place.

　　　　And, insofar as, you know, there may be some

allegation that this is unlikely to occur because of the --

because of the potential prejudice to the non-debtor Santa Fe

entities, we would submit that they are, in fact, fully up to

speed.  Global Santa Fe Corporation, the parent of these

Debtors, has made disclosures about this litigation in its

10k's.  I think the schedules and statements of financial

affairs reflect that they are, in fact, funding the litigation

and controlling the defense on behalf of the Debtors.  I don't

think there is any meaningful prejudice from that standpoint.

　　　　THE COURT:  Well, let me ask you this, Mr.

1 Werkheiser.

2       MR. WERKHEISER: Yes, Your Honor.

3       THE COURT: What goes on out in Louisiana is beyond

4 my control and it's a little bit of tea leaf reading which is

5 difficult. The motions that are pending before me which I can

6 deal with, how much discovery are you going to need, if any,

7 how much of an imposition is your motion going to place upon

8 the Debtors at this point? Give me a sense of what litigation

9 is necessary in connection with the pending motions.

10       MR. WERKHEISER: Well, Your Honor, we certainly

11 think that the Court could look at the documents that we've

12 provided to the Court which, you know, largely consist of the

13 Debtors filings, other public documents, the Debtors testimony

14 at the 341 hearing, and court documents from the other

15 litigations and without even having a full blown evidentiary

16 hearing, I believe we'd be able to find sufficient basis to

17 dismiss the case or grant other relief here.

18       You know, candidly, I think my clients case would be

19 improved with more time, that, you know, if I had the

20 opportunity to pursue some discovery, I may find the smoking

21 gun document that says this was all planned or, you know, the

22 testimony saying that this is a great litigation tactic or

23 something to that effect. But we think the Court can proceed

24 on the basis of these documents and grant the relief. And that

25 sort of segues Your Honor to a suggestion that I was going to

make to the Court as, you know, I guess there's a couple of menu options here, we can try to deal with the scheduling issue.

We could set a hearing date prior to October 20th and that could function as the final hearing on Santa Fe's various requests for relief to the Court and then, of course, we'd back out for response and reply deadlines related thereto. And Your Honor could make a determination on that day, in fact, you know, am I going to grant the relief that Bass requests this day, do I have a sufficient record to do that, do I think there are material issues in dispute that the record needs to be further developed on, and so on, and if that were the case, I think Your Honor could balance the parties interests and grant Santa Fe, in effect, limited relief from the automatic stay on an interim basis, to allow it to at least proceed with the assertion of the claims in the Louisiana action and start the process of pursuing those claims there.

In effect, you know, to the extent there's any prejudice at all associated with that, I think it really just comes down to, you know, the Debtor has to spend a little bit of money appearing in the Louisiana action, but there's no meaningful prejudice in terms of claims being adjudicated or rights being substantively affected.

THE COURT: And, you have put in your record, in effect, in support of your motion, through affidavit, is that

1  correct, so, in other words I have a record in front of me,

2  it's a limited record I recognize, but it is a record, it's an

3  evidentiary record at this point.

4  　　　　　MR. WERKHEISER:  Your Honor, candidly, the affidavit

5  that we provided is simply my affidavit attesting to the true

6  and correct nature of the documents that are attached.  So, I

7  think there is a record based on matters that Your Honor can

8  take judicial notice of and publicly available documents and

9  court pleadings here, and there is a record based on the

10  testimony of the Debtors own records and of Mr. Fahr at the 341

11  meeting which corroborates many of the statement in our papers.

12  　　　　　THE COURT:  Okay.

13  　　　　　MR. WERKHEISER:  So, Your Honor, that certainly would

14  provide you an alternate way to proceed here.  I don't know

15  that we need to make the final decision today whether Your

16  Honor will grant final relief a date prior to October 20th, but

17  we'd certainly ask that a hearing be set prior to that day and

18  that Your Honor consider argument on the motions on that day

19  and make a determination at that time if Your Honor is not

20  prepared to grant final relief that day, to then consider

21  whether to grant whether to grant some interim relief from the

22  stay to at least avoid the prejudice that would result to Santa

23  Fe if it's not able to proceed on the claims at all, prior to

24  October 20th and we think on balance there would be -- the

25  interest would weigh substantially in favor of Santa Fe in

1   pursuing that course of action.

2            THE COURT:  Thank you.

3            MR. WERKHEISER:  Thank you, Your Honor.

4            THE COURT:  Thank you.  Mr. Monaco.

5            MR. WERKHEISER:  Could I -- I think, Your Honor, I'm

6   sorry.  If I could just correct one statement.  I think I said

7   the interests would weigh substantially in favor of Santa Fe,

8   obviously in favor of Bass, in pursuing that course of action.

9            THE COURT:  I understood that.

10           MR. WERKHEISER:  So the record is clear.

11           THE COURT:  Thank you, yes, I understood.

12           MR. DEMMY:  Your Honor, I think that was a judicial

13  admission that --

14           THE COURT:  Thank you, Mr. Werkheiser.  Mr. Monaco.

15           MR. MONACO:  Good morning, Your Honor.  For the

16  record, I represent Global Santa Fe.  That is the entity that

17  Bass is attempting to assert alter ego claims against.  I've

18  just been retained so I'm getting up to speed, I don't have the

19  depth --

20           THE COURT:  You confused me, you're sitting at the

21  wrong table.

22           MR. MONACO:  Well, I didn't want Mr. Werkheiser to

23  feel alone,.

24           THE COURT:  Okay.

25           MR. MONACO:  Your Honor, I don't have the breadth or

depth of knowledge as some of the other attorneys in the
courtroom about this case, but we would agree with the Debtors
that such claims belong to the estate, cannot be asserted by
Bass, but we do strongly disagree that we are the alter ego of
the Debtors and in this regard, Your Honor, we just want to
inform the Court and the other parties in the courtroom that we
intend to file a motion to intervene in the existing adversary
proceeding and a complaint and intervention to obtain a
judicial determination that we are not.

We do not see any reason to expedite this process.
This matter must go to trial in any event, and we should have
an orderly process that includes discovery.  I'm probably
stating the obvious that this is going to be a fact intensive
inquiry.

Your Honor, we also would like to point the Court's
attention the fact that we believe that Bass is being
inconsistent with its arguments and Mr. Demmy alluded to the
motion to transfer venue.  I'd like to specifically quote from
that, that's Exhibit F to the adversary proceeding at Page 6,
paragraphs 11 and 12 and I'm quoting verbatim, Your Honor.  "As
the bankruptcy case is proceeding in Delaware and the removed
action -- and for the record that refers to the Teebo
litigation -- is intimately intertwined with Santa Fe's
bankruptcy case in the interest of justice and efficient
administration of the Santa Fe case, the removed action should

be transferred to district court in Delaware and ultimately

referred to the bankruptcy court for the District of Delaware."

And it goes on to say in paragraph 12 "That once the

disposition of the location of this litigation is resolved,

Bass intends to investigate and, if appropriate, file the

necessary pleadings to examine the propriety of the bankruptcy

filings as well as to file a motion to lift stay to add Santa

Fe and Memorial as third party defendants in the removed

action."

So, what Bass has done is admitted that this is the

proper forum to resolve these issues and we believe that to

expedite this process would just deny not only my client due

process but other parties as well.

THE COURT:  Well, I don't think Bass is taking any

inconsistent position here, but hasn't the rug been pulled out

from under them by the remand back to the state court at this

point?

MR. MONACO:  Well, Your Honor, that may be so, but I

think at a deeper level, more fundamental level, they're saying

that this issue can be resolved here, regardless of what

actually happened.  They have admitted that this matter can be

resolved here and we're prepared to do that.  We intend to file

a motion to intervene in the adversary proceeding within the

week and that having been said, we believe that this should be

factored into the schedule and we would suggest that the Court

1 hold, respectively request that the Court hold another status

2 conference within a couple of weeks, a month or so, after we

3 have filed this motion to intervene and we can have a

4 scheduling order that would include my client as a party in

5 this action.

6 I make one other observation for the Court and this

7 is my understanding of the rules that in connection, at least

8 with the motion for relief, it's my understanding that unless

9 the facts in a motion for relief are stipulated to, that the

10 initial hearing could act only as a preliminary hearing and it

11 has to be set forth a final evidentiary hearing subsequent to

12 that. So, I just point that out to Your Honor in terms of

13 scheduling this matter. But with that, Your Honor, I would

14 request that this matter not be shortened and that we have an

15 orderly scheduling case management order that would include my

16 client as a party in this matter. Thank you.

17 MR. WERKHEISER: Your Honor, may I --

18 THE COURT: Yes, Mr. Werkheiser, please.

19 MR. WERKHEISER: Your Honor, I think there may be

20 some misunderstanding as to Bass' position as articulated in

21 its motion to transfer. Bass at that time was facing the

22 assertion by the Debtor that these claims are property of the

23 estate and the automatic stay applies. In the face of those

24 assertions, Bass has acknowledged and continues to acknowledge

25 today the issue of whether they are property of the estate and

whether the automatic stay applies and relatedly, whether the
stay should be lifted and ultimately, whether there should be a
bankruptcy, are issues for this Court to decide, not the
underlying adjudication of whether, in fact, there was
liability on the part of the Santa Fe affiliates for the
matters at issue here.  I just had hoped to clarify that.

Secondly, Your Honor, with respect to Mr. Monaco's
statements about the procedural posture of the motion for
relief from stay, you know, I just submit that it's Your
Honor's determination of whether, in fact, there are facts in
dispute that would warrant having a further evidentiary
hearing.

And, in addition, as pertains to the motion for
dismissal of the case for bad faith, it has been held on more
than one occasion that such motions can proceed on the basis of
the record without evidentiary hearing if the bad faith basis
of the petition is apparent from the record that exists in the
case.  And by way of citation, Your Honor, I'd just reference
In re CTC Ninth Avenue Partnership, which is 113 F.3rd. 1304,
it's a Second Circuit case.

There's also, Your Honor, the Prime Stone opinion
which I participated in from the debtors side, where the case
was dismissed as a bad faith filing without evidentiary hearing
by Judge Walrath.  That dismissal was affirmed on appeal by
Judge Robinson and there's a reported opinion related to that.

1    Finally, obviously, it is news to us that Global

2  Santa Fe seeks to intervene in the adversary proceeding,

3  they're obviously entitled to seek to do that and, you know,

4  we'll address that.  I'm not sure if there's standing for them

5  to be involved, but I didn't want our silence to be deemed

6  consent to that happening.  Thank you, Your Honor.

7    THE COURT:  Understood.  Mr. Demmy and Mr.

8  Buchbinder, I don't know whether or not you wish to be heard

9  from this morning, but I want to at least acknowledge you're

10  here and, obviously, you'll have an opportunity to be heard,

11  but why don't we hear from Mr. Demmy first.  Mr. Demmy.

12    MR. DEMMY: Your Honor, I want to make three points.

13  One, with respect to prejudice.  For all the reasons -- I'm not

14  going to repeat it, because these are contribution claims, even

15  if they have the right to assert them because they are in the

16  nature of contribution claims, there's no prejudice if they're

17  allowed to assert them on October 19th or November 19th.  Those

18  claims will still exist and they're still not -- they don't

19  have to be brought in the Teebo suit, they can be brought

20  afterwards.  So, there's no prejudice to Bass in that regard.

21  But the prejudice that, and I'll admit that I have overlooked

22  it and remiss for doing so, I need to mention to the Court, is

23  that Bass, what they're doing here is trying to assert claims

24  for themselves that are owned by the estate and should be

25  asserted for the benefit of all creditors of the estate, both

insurance coverage claims and also the alter ego claims and if
Global Santa Fe is now going to voluntarily become a part of
the action, I mean, this is the forum, this is a central forum
for all those claims can be resolved for the benefit of all the
creditors, the estate and not just for Bass. So, for the Court
to sort of plunge head long into a scenario and I'm not quite
sure I understand the interim relief scenario that Mr.
Werkheiser was alluding to, but if it's in the nature of, well,
just let us go down to Louisiana and see if the Louisiana court
will let us assert those claims, I don't think the Louisiana
court is in a position to make that determination, it's clearly
a bankruptcy determination that this Court need to make.

The second point, Your Honor, Mr. Werkheiser made
some statements regarding the status of the Louisiana
litigation which I just don't think are correct and, neither
admittedly, in fairness, neither he nor I are down in Louisiana
on the ground and know what's happening. That's why I've had
Mr. Pabst join us for the call. He was counsel to the Debtors
in the Louisiana lawsuit and I think he can tell the Court
that, in fact, the Debtor has not kept pace of what's been
happening, that there's been a lot of discovery that's occurred
since the bankruptcy was filed and there are other motions than
just the Bass motions on the schedule for October 20 and we
submit the Bass motions are void because when they were filed,
they were filed in violation of the automatic stay.

**J&J COURT TRANSCRIBERS, INC.**

1          And the third point, Your Honor, is that the

2   provisions in the motion to transfer that Mr. Monaco cited, I

3   don't think can stand for a proposition other than that Bass

4   believes the alter ego claim should be resolved in this court

5   because what Bass says is that we've removed the action, the

6   Louisiana action in which I want to assert alter ego claims

7   again the Santa Fe affiliates and we think that that removed

8   action, including this alter ego claim should go to Delaware

9   because the Delaware court should decide it.  So, I don't think

10  there's any way you can read that other than as Mr. Monaco

11  asserted to the Court.

12          THE COURT:  Okay.

13          MR. DEMMY:  Thank you, Your Honor.

14          MR. WERKHEISER:  May I just -- one more time, Your

15  Honor?

16          THE COURT:  Sure, Mr. Werkheiser.

17          MR. WERKHEISER:  I just -- very briefly, just to

18  respond to the suggestion that there's prejudice to the estate

19  here by the very fact that Bass is trying to pursue alter ego

20  claims and insurance claims that the Debtor contends are

21  property of the estate.

22          That sort of begs the question, Your Honor, and so

23  the ultimate issue on that motion to dismiss the case was a bad

24  faith filing is whether, in fact, there is an estate to be

25  administered, whether in fact there is any benefit to creditors

1  of maintaining a bankruptcy before this Court and if that's not

2  the case, then that argument as to prejudice really just has no

3  substance to it.  Thank you, Your Honor.

4          THE COURT:  Thank you.  Mr. Buchbinder.  Good

5  morning.

6          MR. BUCHBINDER:  Good morning, Your Honor, Dave

7  Buchbinder on behalf of the United States Trustee.  I do not

8  have a position to assert this morning on behalf of my client,

9  I'm here primarily in a role that's probably not too different

10 from that of the Court this morning, that is to learn.  Thank

11 you, Your Honor.

12         THE COURT:  Okay, that's great.  Do you think after

13 you've had a chance to digest all of this, that it's likely

14 that the United States Trustee will be taking a position in

15 this litigation?

16         MR. BUCHBINDER:  I honestly do not know, Your Honor.

17         THE COURT:  Okay, that's fair.  Thank you, Mr.

18 Buchbinder.  Let me say this to you because there's a lot going

19 on in Louisiana but there are also some extremely significant

20 issues here in Delaware, obviously, and for that reason I

21 don't think that the Louisiana litigation and that schedule

22 should be driving the Court's determination of these very

23 important bankruptcy issues.

24         On the other hand, I don't want this case to languish

25 because I can see where if things sort of change in Louisiana

1  schedule wise, it might be helpful for the parties to have had

2  a determination sooner rather than later on these issues.  By

3  sooner, I'm not talking about before October 20th, and I'm not

4  sure, really, that an interim ruling would be very helpful to

5  anyone and I'm not even sure it could --- it's possible, given

6  how complicated and intertwined a number of these issues are.

7  But at the same time, I would like you to consider moving the

8  case along a little more promptly, perhaps, I think I'm talking

9  about having an evidentiary hearing to the extent one is

10 appropriate at that point.  You may all decide that you are

11 prepared to submit the issues on the record, but at least you

12 would have an opportunity to present evidence and I'm thinking

13 toward maybe the end of November, which gives parties a little

14 bit more of an opportunity to develop their record, to take

15 discovery, for the parties, Mr. Monaco's client, for example,

16 to at least have filed the motion to intervene and to have had

17 that determined.  So, I think that is probably how we ought to

18 proceed, which will make things a little more organized and it

19 will present the Court, I think, with a better record upon

20 which to make a determination of these important issues.  Mr.

21 Demmy.

22        MR. DEMMY:  Your Honor, I appreciate the Court's

23 desire to move the matter forward and I can't say that I

24 disagree.  I didn't get into this case with the mind set that

25 it was going to be here a year from now still thinking about

these kind of issues because I understand that we need to do things and do them promptly. So, we can live with the end of November date.

The only reason why I rise is, I don't know what the complaint Global Santa Fe is going to file, so there's that caveat, there's that unknown out there, so we'll just deal with that at the time, I just want to rise and say that that may impact on scheduling as well. I just don't know.

THE COURT: I mean, it seems to me one thought I have is, perhaps, we could get Global Santa Fe to file a motion to intervene to the extent it's going to do so and apparently it is, and we could at least hear argument on that toward the end of October, which would then enable the parties to know where they're headed for an evidentiary hearing toward the end of November.

MR. DEMMY: That would be acceptable to the Debtor. You know, the Debtor's view is that the claims should be resolved in this court, so I'm not going to take a position, I haven't seen a motion, don't know what they're going to say.

THE COURT: Right.

MR. DEMMY: But, I would suggest that, perhaps, it would not be a big contest from the Debtor because I think the claims belong here and that would be my initial impression of the motion.

THE COURT: Okay. Mr. Werkheiser.

1        MR. WERKHEISER:  Your Honor, I understand Your

2   Honor's ruling, I'm wondering if we could just revisit the idea

3   of interim relief momentarily.

4        What we posited there was --

5        THE COURT:  Yes, help me out a little bit with --

6        MR. WERKHEISER:  Certainly, Your Honor.  It was not

7   any affirmative adjudication by Your Honor on an interim basis

8   whether, in fact, these were property of the estate and

9   whether, in fact, the stay applied or the stay should be lifted

10  on a final basis.  I'm not asking Your Honor at this point to

11  make a determination on those factors, but simply granting a

12  limited annulment, modification of stay because Mr. Demmy has

13  contended that, you know, the actual filing of the motion is

14  void as having violated the stay, simply for the limited

15  purpose of allowing Santa Fe to assert the third party claims,

16  serve process on them and start the process on pursuing those

17  claims.  I'm sorry, I said Santa Fe again, Bass.

18        THE COURT:  I understand.

19        MR. WERKHEISER:  To do that, with the understanding

20  that Bass is not, in taking those actions, violating the

21  automatic stay, acting in contempt of this Court, incurring

22  attorneys fees liability to the Debtor by those action, but

23  with the full reservation that the Court could later

24  adjudicate, in fact, that these are property of the estate,

25  that the stay applies and that the bankruptcy is valid, that

1  there's no basis to lift the stay and the music would have to

2  stop and Bass couldn't pursue the claims any more.  I think

3  that might strike the balance between protecting the Debtor's

4  interest in trying to have a further developed record and

5  having some time to respond and at the same time making sure

6  that Bass does not get jammed in the state court by what is

7  presently a fairly tight schedule that has been established by

8  the judge.  And, just hope that Your Honor would consider that

9  as an interim step.

10       THE COURT:  Is there any concern on your part in

11  proceeding with that in Louisiana, the issue, the third party

12  issue that you would be creating an opportunity, if you will,

13  for inconsistent resolution?  Are you suggesting that what it

14  would be, in effect, would be a place holding litigation and

15  then subject to my ruling thereafter, we would know whether or

16  not that claim could or could not proceed in Louisiana?

17       MR. WERKHEISER:  I'm assuming, Your Honor, because

18  the trial is not scheduled until February, that if we were to

19  obtain a final ruling in this litigation by late November, that

20  there would not be a final adjudication on the merits of any of

21  these claims by that point in time.  And I think that's

22  probably not unrealistic given that schedule, so that nobody's

23  rights would be permanently fixed by virtue of whatever occurs

24  in Louisiana.

25       And, certainly, you know, the underlying assumption

1  in that proposal is that Bass would take no steps to obtain a

2  final judgment or to enforce a final judgment it would simply

3  take whatever steps it needed to take in order to be prepared

4  for a trial to occur in February if one was to go forward.

5          THE COURT:  Mr. Demmy.

6          MR. WERKHEISER:  Thank you, Your Honor.

7          THE COURT:  Thank you, Mr. Werkheiser.  Would you --

8  you know, I'm thinking, is that proposal even, perhaps, the

9  kind that might be agreed upon between the parties with the

10 understanding that it really is strictly procedural and that

11 the issue would, in fact, be before this Court well before

12 anything happened in Louisiana?

13         MR. DEMMY:  Well, except that, Your Honor, as a

14 practical matte, there's a discovery cutoff of November 8th,

15 and a dispositive motion date of November 22 and I think this

16 might be Mr. Monaco's clients issue, but I'll just raise it.

17 You can't be a little pregnant, you're either in the case or

18 out of the case and if they are in the case, what does the

19 Louisiana judge do with them being in the case and that they be

20 in the case asserting claims that there's been no adjudication

21 that they even posses, would the Bass folks then take

22 discovery, could they even be able to serve the complaint, the

23 risk of the Global Santa Fe entities having to litigate in two

24 forums.  I think there's too many problems with it, to serve

25 any purpose.  I think what the Court has done is struck a

reasonable balance in saying that you want to resolve this

matter by the end of November and if I play it the other way,

if the Court were to side with Bass on the property of the

estate and automatic stay issues, just assume that to be the

case at the end of November, well Bass then can always go down

to Louisiana and say hey, look, we can bring these claims and

let the Louisiana judge determine at that point what he or she,

I don't even know if it's a man or woman, but what the

Louisiana judge is going to do with those claims.  I just think

there's too many practical problems and it doesn't solve any

issue.

THE COURT:  Mr. Werkheiser -- Mr. Buchbinder, I don't

want to foreclose your opportunity to speak her.

MR. BUCHBINDER:  Your Honor, Dave Buchbinder, again,

for the record, and I reiterate that the U.S. Trustee has not

determined whether or not to take a position with respect to

any of these motions, but in listening to the arguments and in

thinking this through, I want to offer the observation to the

Court and the parties that, perhaps, for purposes of the

bankruptcy court, the threshold question to resolve is the

motion that Bass has filed to dismiss the case for bad faith,

because if the Court were to grant that motion, all of the

other issues before the Court which do appear interesting,

would become moot and if the Court were to determine to not

grant that motion, then the other issues would be ripe for

1  resolution and, perhaps, the Court can inquire of the parties

2  as to whether or not there is someway that we can hear that

3  motion first and rather quickly.

4       THE COURT:  Thank you, Mr. Buchbinder, that's a good

5  suggestion and, of course, we still have Mr. Monaco's client

6  who will be intervening at some point.

7       MR. MONACO:  Your Honor, I don't disagree with what

8  Mr. Demmy said, but at the same time it would seem to me the

9  Debtor would have to also expend time and energy and money to

10 be involved at discovery and it defeats the whole purpose of

11 having an automatic stay and having these bankruptcy issues

12 resolved first, which are going to be probably complex and time

13 consuming in and of themselves.  So, I would be opposed to any

14 type of interim relief.

15      THE COURT:  And I assume that bad faith issue and the

16 dismissal issue would require some evidence to be submitted to

17 the Court.  There might be some discovery here.

18      MR. WERKHEISER:  Your Honor, again, for the record,

19 Gregory Werkheiser.  I would submit that, actually, Your Honor

20 could act on that motion without evidence, essentially treating

21 an initial hearing on that motion as a summary judgment form of

22 determination, judgment on the pleadings because based on the

23 materials that we've attached, I think they establish beyond

24 reasonable dispute, that there is no going concern here,

25 there's no business to reorganize, there's no operations,

there's no employees, there are no assets to speak of that
would benefit from the imposition of the automatic stay. The
only assets that they've identified are inner-company claims
between the two Debtors which raise their own issues about
inner-company conflicts between management and professionals
and the insurance claims which they've yet to specifically
identify and refused our inquiries about.

And neither of those sort of claims are the basis for
reorganization for the imposition of the automatic stay.
There's no benefit to anybody from imposing the stay on those
claims because they exist and they are what they are whether
you're in bankruptcy or out of bankruptcy.

So, I mean, that's just foreshadowing some of the
arguments that appear in our papers, and I think arguments that
are fully supported by the undisputed record that exists and
Mr. Fahr's testimony at the 341 hearing and so on.

So, we would submit, certainly, it is imminently
feasible to have a hearing before October 20th, to deal
exclusively with the motion to dismiss the case in bad faith
and we'd embrace that idea.

THE COURT: Okay. Mr. Demmy, I'm kind of sorting out
my thoughts, but I'll hear from you finally.

MR. DEMMY: Okay. Your Honor, clearly on the motion,
the motion to dismiss raises a whole host of issues beyond the
541 and 362 issues, so I would even more strongly suggest that

the Debtors be given a fair opportunity to respond to that.
Bass has put in a lot of things in its papers that we flatly
disagree with, that we will contradict in our papers and that
we, again, as I said at the start of this presentation, that we
definitely believe we need some discovery on.

One of the things that Mr. Werkheiser just said is
that well, there's no operations here and we've not disagreed
with that, we've not shied away from that. It is apparent that
a dissolved company has not operations per se, but it also is
clear and we've provided some authority to the U.S. Trustee on
this point and we've certainly provided to Bass and the Court
when we filed responsive papers, that a dissolved corporation
has the ability to file a bankruptcy case to assist in the
liquidation and windup of its affairs. The bankruptcy is a
centralizing forum. The Debtors have over 200 creditors spread
among three different lawsuits, Louisiana, Oklahoma and
California, there are other claims, claims that we are still
finding out about, there is apparently a potential superfund
claim against the Debtor that we are investigating and we just
got notice of within the past week or so. There are actually
assets coming into the estate, the Debtor was a party, a member
unknowingly because it was going through a dissolution and
windup procedure, but is entitled to about a $60,000 class
action settlement that's going to come in. We have not refused
to disclose our insurance, we were in the mode of investigating

that insurance.  We have disclosed certain of the insurance
policies that we believe exist, Bass is trying to sue those
insurance companies in Louisiana to obtain that coverage and we
are continuing the process.  We took a very conservative
approach in terms of filing schedules and not identifying
asset.  If we didn't have, you know, a really good faith basis
to know exactly that they were, in fact, assets of the estate,
at the urging of the U.S. Trustee we're going to file an
amended schedule which has the insurance policies that we
believe and perhaps hope provide coverage and are assets of the
estate and we've never either before the Court or the U.S.
Trustee or otherwise shied away from the fact that we believe
that the alter ego claims that have been talked about are
assets of the estate that we need to deal with.  So, there
clearly is -- and we're getting into the merits but I think it
shows the Court why rushing to a quick hearing without giving
the Debtor a full chance to response to what Bass has alleged
is inappropriate under the circumstances and we ought to be
allowed that opportunity to fully brief, respond, present Mr.
Fahr at an evidentiary hearing, because we don't believe that
his testimony has been fairly characterized to date and for all
those reasons, Your Honor, we believe that the November hearing
date is soon enough, in our view, considering all the issues
here and what we need to do between now and then and especially
because Bass is not going to be prejudiced.  Bass will have the

1 claim now or then, if the Court sees it its way and dismisses

2 the case or rules that Bass owns the claim and the estate

3 doesn't own the claim and it's a contribution claim, it can be

4 asserted after the Teebo also is wound up.  So, there is no

5 prejudice to Bass and in light of that, I think the November

6 date is warranted under the circumstances, Your Honor.

7 　　　　THE COURT:  Well, here's what I'm going to do.

8 Because it seems to me that the bad faith motion to dismiss is

9 a very finite issue as will be the motion to intervene, so

10 unfortunately, I have one of these judicial conferences the

11 week of the 16th, of October 16th, which is somewhat important

12 because as you know, for new judge, we're supposed to finally

13 learn what we're supposed to have been doing for the last six

14 months.  But I'm going to cut that short and I'm going to

15 schedule a hearing on October 19th, on the motion to intervene,

16 if possible.  I also want to obviously taken into account

17 counsel's schedules, October the 19th, and the motion to

18 dismiss on bad faith.  I recognize that that doesn't give the

19 parties a lot of time for discovery, although I don't think

20 there ought to be a lot of discovery on either issue.

21 Certainly not on the motion to intervene, I don't know that

22 there will be any discovery and on the bad faith issue, there

23 may be some limited testimony, but I don't think there should

24 be a lot of discovery because it's really the Debtor's issue to

25 defend and whatever evidence it has is already in its

**J&J COURT TRANSCRIBERS, INC.**

1  possession, presumably, but there is an opportunity to take

2  some limited discovery and if I don't think that there is a

3  sufficient record at that point, then I won't decide the issue

4  on the 19th, but at least we'll have an opportunity to hear the

5  strength of that motion.  If it's granted, of course, it will

6  relieve the parties of a lot of subsequent litigation.  And if

7  it's not granted, of course, then we go on and litigate and we

8  still have a hearing at the end of November.

9       So, just looking at my calendar, I think if we

10 scheduled this for nine o'clock on the 19th, Thursday the 19th,

11 that would give us sufficient time and I could at least, you

12 know, issue a decision on the 19th as well.  I know it makes

13 the schedule a little bit tight and we have to talk about

14 scheduling, or perhaps, what usually works best is if the Court

15 doesn't get involved in the response dates, but allows the

16 parties an opportunity to at least discuss it and then if

17 there's a problem, you call and we try and resolve it that way.

18      So, let's set this down on the motion, on the two

19 motions, one that hasn't even been filed yet, I recognize, but

20 will be filed shortly, the motion to intervene and the motion

21 to dismiss on bad faith for October the 19th, Thursday October

22 19th, at 9 a.m., assuming counsel is available and I think we

23 should then be talking about our omnibus hearing on all of the

24 pending motions.  We have Thanksgiving the 23rd.  I can -- no,

25 I'm not going to do that to people.  We could do this -- it may

be a two day hearing, it seems to me. I don't know. Obviously
none of us really know, but what I'm going to do then is I'm
going to schedule this for Thursday and Friday, November 30th
and I guess it's December 1st. And, I have a matter at ten
o'clock, so we'll start at eleven o'clock on the 30th and see
to what extent it's necessary for us then to carry on Friday,
December the 1st. That gives people an opportunity to brief
and, again, I think it would be helpful were you to at least
exchange thoughts on how you would like to schedule the
response dates and the briefing schedule and any discovery and
to the extent you need my help, I'm here to help and to resolve
any differences that the parties might run into. Any thoughts?

        MR. WERKHEISER: Your Honor, Gregory Werkheiser,
again, for Bass. We're amenable, certainly, to that schedule.
I just did want to inquire, Bass would probably like the
opportunity to file a reply in support of the bad faith motion,
assuming that there will be an answering objection filed from
the Debtor and, perhaps, to the intervention motion or excuse
me, I guess that's not our motion, but to the bad faith motion,
we'd like the opportunity to file a request. So, I just wanted
to inquire of Your Honor when you would like to have that
replied by and then I think Mr. Demmy and I could probably work
out a date for his answering brief that works for both of us.

        THE COURT: Well, I want to give all of you an
opportunity and I'd also like an opportunity to read the reply

1  and since I'll be out of town, I think if we could get that by

2  the end of the day on Tuesday, October 17th, that would then

3  enable me to get the papers delivered to me in Washington, DC

4  where I'll be and review them and be prepared.  Does that work

5  for you?

6          MR. WERKHEISER:  I think that would work and,

7  perhaps, if you know answers would be filed on the Friday

8  before, then we can work within those constraints.

9          THE COURT:  Okay.  That sounds good, and why don't we

10  do that, Mr. Demmy?

11          MR. DEMMY:  I was just going to rise and say the 13th

12  was acceptable for the response.

13          THE COURT:  Good, okay.  Now, Mr. Monaco, you've got

14  this, at the moment, sort of a ghost motion.

15          MR. MONACO:  Well, Your Honor, unfortunately, I'm

16  scheduled to start a three week trial with Judge Kerry on

17  October 16th and if I wasn't involved with the trial, there was

18  a function out of state I was supposed to be at on the 19th.  I

19  don't know if there's anyway to move it up to the 18th or we

20  could do it the following week.  If we can't, I'll just have to

21  be here.

22          THE COURT:  Well, I know from Mr. Werkheiser's

23  standpoint the 19th is extremely significant.

24          MR. MONACO:  I'll make arrangements, either for

25  myself or someone else to be here on the 19th.

**J&J COURT TRANSCRIBERS, INC.**

1    THE COURT:  You know, the motion to intervene

2  certainly is not going to require any testimony.

3    MR. MONACO:  No, Your Honor, it's strictly --

4    THE COURT:  I would be willing to decide that on the

5  papers.

6    MR. MONACO:  Okay.

7    THE COURT:  And without argument.  I don't know how

8  Mr. Werkheiser is going to feel about that.  But it seems like

9  the sort of discrete issue that could be handled that way.

10    MR. WERKHEISER:  Your Honor, Gregory Werkheiser again

11  for the record.  It may be that we ultimately wouldn't oppose

12  that, I just -- this is the first I've heard of it and I just

13  haven't had a chance to inform myself on the subject and

14  whether it's appropriate for them to be in here or not.

15    THE COURT:  Okay.

16    MR. MONACO:  Well, we can play that by ear in terms

17  of the motion to intervene, whether a hearing is even

18  necessary.

19    THE COURT:  Exactly.  All right.  We'll know that

20  sooner than later it seems to me and I could decide that on the

21  papers, though.

22    MR. MONACO:  Well, Your Honor, maybe what we could do

23  is set up a schedule for that, the time by which we need to

24  file it, responses.  I -- without having talked to my

25  co-counsel, we could definitely have this thing filed, I

1 believe, by October 10th.

2        One thing we would like to do is actually attach the

3 complaint in intervention so the parties would see what it is

4 that we're actually filing, the Court could see.  We could

5 accelerate that if you think that would be helpful to the

6 process.  You tell me.

7        THE COURT:  I think from Mr. Werkheiser's standpoint,

8 I don't think the Debtor is going to have any opposition, so it

9 would be Mr. Werkheiser and that's not going to give him much

10 time to put in opposition papers.

11        MR. MONACO:  Well, you tell us when you want us to

12 have that filed and we'll --

13        THE COURT:  Mr. Werkheiser, let me just get your

14 thoughts on that first.

15        MR. WERKHEISER:  It is a big tight, Your Honor and

16 while we weren't certainly -- had no objection to the matter

17 being considered on the 19th, I'm not sure that it's driven by

18 the same timing considerations as is the bad faith motion.

19 You know, perhaps --

20        THE COURT:  The only thing that's driving it is the

21 November hearing date and making certain we know whether or not

22 Global is going to be involved in that hearing.

23        MR. WERKHEISER:  So, maybe, I'd venture if they could

24 file something by this Friday, we would, you know, endeavor to

25 file something well in advance of the October 19th hearing.

**J&J COURT TRANSCRIBERS, INC.**

1          THE COURT:  Mr. Monaco, why don't we do that?  Why

2  don't we have your filing by the end of the day, on October 6th

3  and then that would give Mr. Werkheiser, again, until -- how

4  much time would you like?  Would you like to have until your

5  reply date for the motion to dismiss or do you think you can

6  respond sooner?

7          MR. WERKHEISER:  Do you mind if I --

8          THE COURT:  It's very difficult, I know, because we

9  haven't seen that motion yet.

10          MR. MONACO:  Are you talking October 13th, is that

11  the date you're talking about?

12          THE COURT:  The 13th.

13          MR. WERKHEISER:  The 13th was the answer date for the

14  motion to dismiss for the Debtor.

15          THE COURT:  Right.

16          MR. WERKHEISER:  I mean, I can file at that time if

17  you'd prefer.

18          MR. MONACO:  That's fine.

19          MR. WERKHEISER:  Is that -- that's fine, Your Honor.

20          THE COURT:  Okay, let's do October 13th by the end of

21  the day for your response.

22          MR. MONACO: Now, Your Honor, just in case we would

23  want to file a reply if there is some opposition to this, maybe

24  we can file it by --

25          THE COURT:  Why don't we do it by the same time that

1  Mr. Werkheiser's response or reply will be due, which is the

2  end of the day on the 17th?

3          MR. MONACO:  Okay.  And, then if a hearing is

4  necessary we'll deal with it then.  Your Honor, I know that I'm

5  probably not going to be as involved, if at all, in the motion

6  for relief, I was supposed to fly out to a conference.  I don't

7  have my calendar with me because the guards have my BlackBerry,

8  but I think that I'm flying to a conference in Arizona on

9  November 30th and I don't know whether the Court would be

10 amenable to moving that up to the 29th.  If not, we'll have to

11 -- we'll deal with it.

12         THE COURT:  Well, let me ask the parties this because

13 I also have time on Monday the 4th and Tuesday the 5th, and I

14 would be willing to push it a couple of -- that's December I'm

15 talking about.  I would certainly be willing to push it a

16 couple of extra days if that would not create difficulty for

17 anyone else.

18         MR. WERKHEISER:  Your Honor, I apologize for doing

19 this, but could I just inquire of my co-counsel on the

20 telephone whether that causes any problems?

21         THE COURT:  Certainly, of course.  Let me make sure I

22 have your co-counsel's name.

23         MR. WERKHEISER:  That's Leann Moses.

24         THE COURT:  Ms. Moses, I know you've been listening

25 to all this going back and forth on scheduling and how does

1  that proposal suit your schedule?

2          MS. MOSES:  The 4th and the 5th are fine.  If those

3  hearings are going to be heard at the end of November,

4  beginning of December, either of those two work.

5          THE COURT:  All right.  Mr. Monaco, does that help?

6          MR. WERKHEISER:  That works for us, Your Honor.

7          MR. MONACO:  That's the Monday Tuesday --

8          THE COURT:  Yes.

9          MR. MONACO:  Monday, Tuesday of that week?

10         THE COURT:  Will you be back by then?

11         MR. MONACO:  Yes, I should -- I'll be back on Sunday.

12         THE COURT:  Okay, all right.  Then let's do it --

13  let's change it to the 4th and 5th of December.

14         MR. MONACO:  Thank you, Your Honor, I appreciate

15  that.

16         THE COURT:  Certainly.

17         UNIDENTIFIED MALE SPEAKER:  Same time, Your Honor?

18         THE COURT:  Yes.

19         MR. MONACO:  Is that 9 a.m.?

20         THE COURT:  Yes.  Now, because it's the 4th and 5th,

21  actually, I could -- if it's more convenient for anyone, I

22  could start at 9:30 or 10, even on the 4th.

23         MR. WERKHEISER:  If it's not an imposition on the

24  Court, I would appreciate 9:30 or 10.  I have to drop off at

25  daycare in the morning.

1          THE COURT:  Understood.  I remember those days, Mr.

2    Werkheiser.  So, let's start at ten o'clock.

3          MR. WERKHEISER:  That sounds good, Your Honor.

4          THE COURT:  Plus I once remember a judge telling me

5    that he always started at ten o'clock on Monday because the

6    statistics show that's when -- that most of the heart attacks

7    occur on Monday morning, so he gives people a little chance, a

8    little extra time.  Would somebody be willing to submit an

9    order to me on all of this and, again, as you think about

10   things and talk about them, if there are any kind of nuances

11   that come to mind, I certainly would be willing to consider

12   them.

13         MR. DEMMY:  Your Honor is asking for an order,

14   basically, confirming the scheduling?

15         THE COURT:  A scheduling order, yes.

16         MR. DEMMY:  I'll prepare one and forward it around.

17         THE COURT:  Thank you, Mr. Demmy.  Share it opposing

18   counsel and then submit it under a certificate?

19         MR. DEMMY:  Yes.

20         THE COURT:  And I will be prepared to enter it and

21   we'll move things along.

22         MR. DEMMY:  One further housekeeping matter.

23         THE COURT:  Please.

24         MR. DEMMY:  With regard to the October 19th hearing,

25   which I understand what it's about.  Yesterday, the Debtors

**J&J COURT TRANSCRIBERS, INC.**

1  filed two motions, one was a retention and another is a motion

2  seeking authority to enter into a management agreement and

3  incur some credit.

4        Those motions were filed yesterday without noticing

5  hearing because we didn't have any hearings from the Court yet.

6  We had a hearing on October 19th and I understand they would

7  be moot if the Court decided to dismiss the case.  What I'm

8  just asking is, can we put those on for the October 19th

9  hearing as a place holder --

10       THE COURT:  Yes.

11       MR. DEMMY:  -- if only as a place holder, perhaps,

12  and, you know, we can deal with those when the time comes.

13       THE COURT:  Mr. Werkheiser?

14       MR. WERKHEISER:  Your Honor, I don't object to

15  putting those on for the 19th, I just wanted to inquire if I

16  could file any objections to those on the 17th when my other

17  papers are due?

18       THE COURT:  Absolutely.  Yes.

19       MR. WERKHEISER:  Okay.

20       THE COURT:  And Mr. Buchbinder, you as well, of

21  course.

22       MR. BUCHBINDER:  Thank you.

23       THE COURT:  All right.  Well, I think we've got it

24  sorted out, at least at the moment and, of course, we'll see

25  how things develop, but otherwise, I will see everyone on

1  October the 19th.  And we'll stand in recess.  Thank you very

2  much.

3          MR. DEMMY:  Thank you, Your Honor.

4          MR. WERKHEISER:  Thank you, Your Honor.

5          MS. MOSES:  Thank you.

6          THE COURT:  Thank you.

7                              * * * * *

8

9                          **<u>CERTIFICATION</u>**

10

11      I, ELAINE HOWELL, court approved transcriber, certify that

12  the foregoing is a correct transcript from the official

13  electronic sound recording of the proceedings in the

14  above-entitled matter and to the best of my ability.

15

16

17

18  <u>/s/ Elaine Howell</u>            Date:  October 12, 2006

19  ELAINE HOWELL

20  J&J COURT TRANSCRIBERS, INC.

21

22

23

24

25