**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

KEVIN GROSS
 JUDGE

844 KING STREET, SUITE 2124
WILMINGTON, DE 19801
(302)573-4571

March 1, 2007

John D. Demmy, Esquire
Stevens & Lee, P.C.
1105 North Market Street, 7ᵗʰ Floor
Wilmington, DE 19801

Francis A. Monaco, Jr., Esquire
Monzack & Monaco, P.A.
1201 North Orange Street, Suite 400
Wilmington, DE 19899

Gregory W. Werkheiser, Esquire
Morris Nichols Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE 19899

     RE:    **In re 15375 Memorial Corporation, et al.,**
            **Case Nos. 06-10859 and 06-10860 and Adversary No. 06-50822**

Dear Counsel:

The Court is responding to discovery issues arising from the referenced cases. The parties

submitted letter memoranda in accordance with the Court's Order Regarding Discovery and Related

Issues, dated February 7, 2007, ("the Order"). In the interest of timeliness, the Court will not discuss

the background procedural posture or factual allegations relating to the substantive issues presented.

With trial scheduled for April 4-5, 2007, and a discovery cutoff of March 13, 2007, practicality takes

priority over an extensive recitation of background. It is sufficient to state that the proponent of the

discovery, BEPCO, L.P. f/k/a Bass Enterprises Production Company ("Bass"), seeks the discovery

at issue in connection with its motion to dismiss or convert the bankruptcy cases, or to appoint a

chapter 11 trustee or to appoint an examiner. The instant discovery dispute arises from claims by

the parties charged with responding to Bass's discovery that a portion of the discovery is protected

by the attorney-client privilege and work product privilege protections. The parties asserting the

protections are the debtors, 15375 Memorial Corporation ("Memorial") and SantaFe Minerals, Inc.

("SantaFe") (collectively, "Debtors"); which in turn are subsidiaries of entities (collectively referred

to as "GlobalSantaFe") which the Court allowed to intervene in the on-going litigation.

The areas of dispute and the Court's resolution are set forth below.[1]

> **1.      Discovery Related to the Investigation Regarding Property
> of SantaFe, Interests in Property of SantaFe Transferred to
> Memorial, GlobalSantaFe or Other Affiliates in Connection with
> the Liquidation, Winding Up and/or Dissolution of SantaFe.**

Debtors have objected to this category of Bass's discovery on the ground of attorney-client

and work product privileges. The Court concludes that such discovery is appropriate and by separate

Order accompanying this letter opinion, will compel debtors to respond accordingly. The work-

product protection is qualified and the burden lies with the asserting party to demonstrate entitlement

to such protection. *Conoco, Inc. v. United States*, 687 F. 2d 724, 730 (3rd Cir. 1982), citing *United

States v. Nobles*, 422 U.S. 225, 239 (1975). The discovery is directed and relevant to the issue of

Debtors' good faith in filing their bankruptcy cases, i.e., that the petitions are supported by a valid

bankruptcy purpose. Bass is seeking discovery relating to or arising from an investigation by the

Kean Miller Jarman LLP law firm ("Kean Miller") utilizing the services of Ernst & Young LLP or

affiliates ("E&Y") covering SantaFe properties or transfers ("the E&Y Investigation"). The Court

is satisfied the discovery is probative and relevant or, as the Bankruptcy Rules make clear, may lead

to the discovery of admissible evidence. Rule 7026(b)(1). The Court's decision to overrule Debtors'

---

[1] Bass has requested clarification of paragraph 5 of the Order wherein the Court framed the privilege issues in an abbreviated fashion. The Court did so for convenience and with the understanding that the parties previously discussed and agreed upon the scope of the privilege dispute. The Order was not intended to modify or negate the parties' agreement. Indeed, Debtors' and GlobalSantaFe's letter memoranda addressed the privilege issues consistent with the parties' agreement.

objection is, of course, not premised upon general principles but the Debtors' affirmative use of the

E&Y Investigation to establish that Debtors had and therefore could pursue claims against affiliated

companies and thereby to support Debtors' assertion that their bankruptcy cases were filed in good

faith.   At a hearing on October 19, 2006, David E. Faure, Debtors' Assistant General Counsel,

testified and used the E&Y Investigation as evidence of Debtors' good faith filing.   Once Debtors

used the E&Y  Investigation as a "sword", they may not raise the work product doctrine as a

"shield".  See *United States v. Nobles*, 422 U.S. 225 (1975) (Defense counsel prohibited from using

an investigator's testimony unless the investigator's report and materials were made available to the

opposition).

Debtors argue that there was no waiver because the work-product privilege, in essence,

belongs to Kean Miller, not Debtors, citing *In re Hechinger Investment of Delaware*, 303 B.R. 18

(Bankr. D. Del. 2003).  The Court is satisfied that Debtors' voluntary and affirmative use of the E&Y

Investigation precludes  Kean Miller's assertion of a work product protection.  See, e.g., *American

Netrocomm Corp. v. Duane Morris & Heckscher LLP*, 274 B.R. 641, 655 - 56 (Bankr. D. Del. 2002).

Further, the fact that Kean Miller was present at the hearing at which Debtors supplied testimony

concerning the E&Y Investigation and did not object or assert its privilege further establishes the

waiver.

However, the Court is satisfied that the waiver does not extend to Kean Miller's opinion

work product i.e., its "mental impressions, conclusions, opinions, legal theories . . . ."  See *In re

Cendant Corp.*, *Sec. Litig.* 343 F. 3d 658, 663 (3d Cir. 2003).  Opinion work product is discoverable

only upon exceptional circumstances not present here.  *Id*. at 663.  Such protection, however, does

not extend to E&Y's opinion and/or  mental impressions since E&Y's employees are not attorneys

and their opinion and/or mental impressions are reflected in the information used by Debtors in Mr.

Faure's testimony at the October 19 hearing.

> **2.      Discovery Concerning Intercompany Claims and Causes
> of Action Relating to Property of SantaFe (including Transfers
> of Property or Proceeds).**

Bass seeks discovery of communications between Debtors and GlobalSantaFe concerning

the decision to file the bankruptcy cases.  Bass seizes upon Debtors' response to Interrogatory

number 10 that: "David E. Faure sought counsel from James L. McCulloch, the senior vice president

and general counsel of GlobalSantaFe Corporation, regarding the decision to file Bankruptcy Cases."

Bass deems this to be a waiver alleging that Debtors and GlobalSantaFe do not share a common

interest and, in fact, are potential adversaries in intercompany claims litigation or challenges.  The

Court rejects Bass's position.  First, the mere disclosure that Mr. Faure and Mr. McCulloch

communicated with one another does not constitute a waiver of the privilege with respect to the

substance of such communications, absent Debtors' or GlobalSantaFe's attempt to use the fact of

the communications as evidence of good faith in filing the bankruptcy cases.  More conclusively,

there is overwhelming case law supporting the proposition that the existence of communications of

privileged information between a parent and its subsidiary does not constitute a waiver of an

applicable privilege. See, e.g., *In re Nucletron Manufacturing Corp.*, 1994 WL 16191611 (Bankr.

E.D. VA. 1994, *2 (quoting *United States v. AT&T*, 86 F.R.D. 603 (D.D.C. 1979): "a corporate

'client' includes not only the corporation by whom the attorney is employed or retained, but also

parent, subsidiary, and affiliate corporations".)  See also *Duplan Corp. V. Deering Milliken Inc.*, 397

F. Supp. 1146 (D.S.C. 1974), holding that the attorney-client privilege is not waived when a

corporation with a legal interest in an attorney-client communication relays it to a related

corporation.  Bass does not dispute the case law on which GlobalSantaFe relies, nor does it cite any

cases in support of its broad proposition that by communicating with affiliated companies, Debtors

waived the attorney-client privilege.  In support of upholding the privilege, GlobalSantaFe submits

the Declaration of Mr. McCulloch who describes his responsibilities as Chief Legal Counsel for the

GlobalSantaFe affiliates, that he renders legal advice to all affiliated entities and, relevant here,

provided advice associated with the bankruptcy cases.[2]  According to Mr. McCulloch's Declaration,

all of the communications regarding the bankruptcy were limited to attorneys employed by

GlobalSantaFe and their affiliates and were not disclosed to third parties.  Lastly, additional support

for GlobalSantaFe's arguments arises from a Management Agreement which the Court approved

whereby GlobalSantaFe agreed to furnish Debtors with legal services.  Under the circumstances,

communications which are privileged under the attorney-client privilege remain so despite

communications between Debtors and GlobalSantaFe or its affiliated companies.  The protection

afforded Debtors and GlobalSantaFe extends only to documents and communications consisting of

legal advice sought and rendered.  It does not extend to documents on which counsel were merely

copied in the ordinary course.  This limitation on the protection of the privilege is in keeping with

the narrow construction of the privilege.  *Westinghouse Elec. Corp. v. Republic of Philippines*, 951

F. 2d 1414 (3d Cir. 1991).  Thus, otherwise non-privileged information cannot be cloaked with

privilege merely by sharing information with a lawyer.

---

[2] The Third Circuit defined the elements of the attorney-client privilege in Rhone-Poulenc
Rorer Inc. v. Home Indemnity Co., 32 F. 3d 851 (3d. Cir. 1994).  Each of those elements is present
here.

**3.Communications Between Faure and McCulloch Re Decision
to File Bankruptcy Cases.**

For the ruling on this category of discovery, the Court refers the parties to the discussion and

ruling under heading no. 2.

The Court will issue an Order consistent with this Opinion.

Very truly yours,

Kevin Gross, USBJ

cc:    Phillip G. Eisenberg, Esquire
       Leanne O. Moses, Esquire